FRANCISCO VÉLEZ GONZÁLEZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

*Número:* G-62-8    *Resuelto:* 21 de junio de 1963

*Luis López de Victoria,* abogado del recurrente; El Registrador recurrido compareció por escrito.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El señor Registrador de la Propiedad de San Germán, denegó la inscripción de la venta de un inmueble (finca) perteneciente a la Mercantil Sucesores de Castañer, S. en C., otorgada por su socio gestor don Antonio Ozona y Frontera, por el fundamento de no haberse acreditado "las facultades

de Antonio Ozona Frontera, para comparecer a nombre de la Sociedad Mercantil 'Sucesores de Castañer, S. en C.' para otorgar escrituras públicas enajenando bienes inmuebles de dicha mercantil, toda vez que según la certificación que se acompaña al documento, las facultades del señor Ozona como gestor de la referida mercantil están limitadas al uso de la firma social para la 'compra y venta de frutos del país y extranjeros, al por mayor y al detall' objeto para el cual fue constituida dicha sociedad".

■ El pacto de la escritura social sobre el cual descansa el señor Registrador dice así: "Es el objeto de la sociedad la compra y venta de toda clase de *mercaderías* y frutos del país y extranjeras al por mayor y al detalle. Serán socios gestores Don Antonio Joy y Joy y Don Antonio Ozonas Frontera, y los dos juntos, o cada uno de por sí, usarán de la firma social." (Bastardillas nuestras.)

Nuestra jurisprudencia tiene establecido que desde que empezó a regir en Puerto Rico el Art. 2 del Código de Comercio de 1885, la compraventa de bienes inmuebles puede reputarse mercantil, por lo que un contrato de esta índole celebrado por el gestor de una sociedad mercantil al cual se le ha confiado el uso de la firma social y la facultad de otorgar escrituras públicas, es inscribible: *Morell* v. *Registrador de Arecibo*, 27 D.P.R. 122 (Aldrey) (1919), cita precisa a las págs. 123–124.

En este caso de *Morell* se explica, que esta prohibición del gestor para otorgar un contrato de compraventa de bienes inmuebles se originaba en el Art. 360 del Código de Comercio de 1829 que expresamente declaraba que tal compraventa de bienes inmuebles nunca se consideraría como un acto de comercio, "pero cuando se redactó el Código de Comercio vigente del año 1885 se suprimió ese precepto y su artículo 2o se escribió de tal modo que permitiese que la compraventa de bienes inmuebles fuese mercantil, diciendo al efecto que serán actos de comercio los comprendidos en el Código y cualesquiera

otros de naturaleza análoga, por lo cual no puede sostenerse hoy que la compraventa de bienes inmuebles no puede ser mercantil".

Una frase bastante parecida, en cuanto al objeto de la sociedad arriba indicada, la estudió la Dirección General de los Registros en su resolución de 11 de agosto de 1908, al autorizar la inscripción de una venta de bienes inmuebles. Dice así: "Consignándose en la escritura de constitución de dicha Compañía que el objeto de ésta era 'la compra y venta de toda clase de artículos extranjeros y del país' y que la gestión estaría 'a cargo del socio D. Luciano Ortuño, quien tendrá el uso de [la] firma social, la representación en juicio y otorgará con tal carácter de gerente las escrituras y poderes que sean necesarios.' "

La doctrina mercantil más moderna se inclina a considerar comprendidos entre las facultades de los gestores, en ausencia de prohibición expresa, los actos de enajenación. El ilustre catedrático de la Universidad de Madrid Rodrígo Uría, en su tratado de *"Derecho Mercantil"* (1960) se expresa así: "Los administradores tendrán las facultades o poderes que les confiera la escritura social. Ésta puede limitar las facultades de los socios gestores y puede dar diferente extensión y contenido a las de unos y otros. *Pero a falta de pacto deben reputarse investidos de los poderes necesarios para realizar el giro o tráfico de la sociedad y para la mejor consecución del fin social.* El concepto de administración social rebasa ampliamente los límites del puro acto de administración civil. El administrador de la sociedad no sólo puede realizar actos de conservación del patrimonio social, sino actos de enajenación y de asunción de obligaciones en general; cuantos actos, en fin, sean necesarios para el desenvolvimiento de la empresa social entran, a falta de limitación especial, en la órbita de poderes de quienes tengan a su cargo la administración de la sociedad." (Págs. 126 y 127.)

El ilustre comentarista francés Georges Ripert, en su *"Tratado Elemental de Derecho Comercial"* (1954), añade: "Es muy difícil determinar que es lo que debe entenderse por administración de la sociedad. El acto de administración no puede aquí caracterizarse por su naturaleza jurídica por oponerse al acto de disposición, pues el gerente está obligado a realizar actos de esta índole, como, por ejemplo, vender las mercancías o material inutilizable. Algunos autores, fieles a una distinción tradicional pero hoy anticuada, le prohiben los actos jurídicos que se refieren a los inmuebles y no solamente las enajenaciones sino también las adquisiciones, existiendo decisiones judiciales en tal sentido. Pero en esta materia las consideraciones de hecho tienen gran influencia. El artículo 1856, párrafo 1ro. del Código Civil [francés], confiere al socio encargado de la administración de la sociedad, el derecho de realizar 'todos los actos que dependan de su administración siempre que se hagan sin fraude.' Estos actos se caracterizan no por su naturaleza jurídica sino *por la finalidad que se propone el gerente.* Nosotros admitimos que tiene el derecho de vender inmuebles que sean inútiles, contraer empréstitos y adquirir un inmueble útil para la sociedad." (Págs. 123–124 del tomo II.) (Bastardillas nuestras.)

Visto el objeto para el cual se constituyó la Sociedad Sucesores de Castañer, S. en C., "la compra y venta de toda clase de mercaderías y frutos del país y extranjeros al por mayor y al detalle", no es difícil concluir que en el tráfico normal de su negocio fuera de utilidad para sus fines sociales adquirir y vender fincas rústicas, como la que hoy estamos estudiando. No dudamos que se le presentarán casos a un Registrador de la Propiedad en los cuales, con vista a la escritura de sociedad, a la extensión o restricción de las facultades y a la operación inmobiliaria que se intenta inscribir, tendrá que ejercitar un cuidadoso celo para evitar disposiciones de propiedad inmueble, que en realidad de derecho, mejor que enajenaciones dentro del tráfico ordinario de los ne-

gocios sociales, sean liquidaciones del haber social, sin la concurrencia de todos los socios o estén hechas en contravención a restricciones de la facultad de disponer de propiedades inmuebles claramente establecidas en la escritura social. Pero no debe partir del principio que las enajenaciones de propiedad inmueble le están prohibidas a la gerencia mercantil, aunque tales facultades no aparezcan expresamente conferidas por la escritura de sociedad.

En cuanto a que la escritura de sociedad no le da autorización al socio gestor para otorgar documentos públicos, se trata de lo que en Derecho Mercantil se conoce como una situación de mero silencio en el contrato, a ser suplida por las disposiciones legales aplicables. En el caso de *Morell* v. *Registrador*, supra, en el cual se copia la exposición de motivos de la Ley del 1885, se hace claro que "la compraventa de bienes inmuebles aunque se califique de acto comercial, se verificará con sujeción a las formalidades establecidas en las leyes especiales sobre adquisición y transmisión de propiedad territorial" (pág. 124), o sea, por escritura pública y de acuerdo con la Ley Hipotecaria de Puerto Rico.

*Se revocará la nota recurrida.*